**Melvin L. BLAKE, Appellant,**

v.

**Mel L. BLAKE, Ignacia Ruiz
and the Attorney General
of Texas, Appellees.**

No. 13–93–172–CV.

Court of Appeals of Texas,
Corpus Christi.

April 7, 1994.

Rehearing Overruled May 5, 1994.

Melvin L. Blake, Wimberly, for appellant.

Tod L. Adamson, Mary E. McCormick, Asst. Attys. Gen., Child Support Enforce-

ment Child Support Litigation Div., Victoria, for appellees.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Chief Judge.

This appeal results from a judgment of paternity. The Attorney General of Texas brought suit to establish the parent-child relationship between Mel L. Blake, a minor child, and the appellant, Melvin L. Blake. By five points of error, appellant contends that the suit was barred by a former statute of limitations, that the court improperly ordered support payments retroactive to the birth of the child, and that he was improperly denied the assistance of appointed counsel. We affirm.

### Factual Background

On April 7, 1992, the Attorney General of Texas, pursuant to Chapter 76 of the Texas Human Resources Code, filed a petition to establish the parent-child relationship between appellant and the minor child, Mel L. Blake.

On May 20, 1992, appellant generally denied the allegation and requested appropriate medical testing. Testing of appellant, the ·child, and the child's mother failed to exclude appellant as a possible biological father of the child. The verified paternity expert's report excluded 99.95% of the male population and determined the probability that appellant was the biological father of the child to be 99.87%.

The paternity report was admitted into evidence at a pretrial conference in July of 1992. On August 3, 1992, the trial court entered a pretrial order which shifted the burden to appellant, in accordance with section 13.06(c) of the Texas Family Code, to show that he was not the biological father of the child. Trial was set for September 28, 1992, however, appellant was granted two continuances. On December 10, 1992, after appellant failed to appear for trial, the court rendered default judgment against him. After hearing evidence, the court determined

appellant to be the biological father of Mel L. Blake, set conservatorship, visitation, and child support, and granted a $30,000.00 judgment against appellant for retroactive support and reimbursement of an equitable portion of prenatal and postnatal health care expenses of the mother and child. Appellant's January 8, 1993, motion for new trial was overruled by operation of law.

### Statute of Limitations

By his first three points of error, appellant asserts that this paternity suit is barred by the one-year statute of limitations in effect at the birth of the child.

■ On August 6, 1977, when the child, Mel L. Blake, was born, the Texas Family Code provided that a suit to establish paternity must be brought within one year of the birth of the child. Act of June 19, 1975, 64th Leg., R.S., ch. 476, § 24, 1975 Tex.Gen.Laws 1261, 1261–62 (amended 1981, 1983, 1987, 1989, 1993) (current version at TEX.FAM.CODE ANN. § 13.01 (Vernon Supp.1994)). This one-year statute of limitations for establishing paternity was declared unconstitutional by the United States Supreme Court because the statute denied "illegitimate children in Texas the equal protection of the law" as guaranteed by the Fourteenth Amendment to the United States Constitution. *Mills v. Habluetzel,* 456 U.S. 91, 102, 102 S.Ct. 1549, 1556, 71 L.Ed.2d 770 (1982). The unconstitutional one-year statute of limitations may not be relied upon by appellant to bar this paternity action. *Id. See also In the Interest of J.A.M.,* 631 S.W.2d 730, 731–32 (Tex.1982).

■ Contrary to appellant's assertions, retroactive application of a subsequently enacted statute of limitations was not necessary to enable the Attorney General to initiate suit against appellant. Because unconstitutionality rendered the 1975 statute a nullity, the Attorney General was entitled to rely on the residual limitations period, which is applicable to all actions not controlled by more specific statutes. *See Texas Dept. of Human Resources v. Delley,* 581 S.W.2d 519, 521 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). Appellant has not asserted that any other, more specific, limitations period is applicable

in this case. The residual period is four years after the day the cause of action accrues. TEX.CIV.PRAC. & REM.CODE ANN. § 16.-051 (Vernon 1986). Additionally, "if a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period." TEX.CIV.PRAC. & REM.CODE ANN. § 16.001(b) (Vernon 1986 & Supp.1994). "A person is under a legal disability if the person is younger than 18 years of age." *Id.*, at § 16.001(a)(1). The child, on whose behalf the Attorney General instituted this suit, was fourteen years old when this suit was filed. Suit was, therefore, filed well within the residual limitations period. We note that, except for a change in the termination of the age of minority from twenty-one to eighteen, this residual limitations period has remained unchanged since at least 1958. *Compare* TEX.REV.CIV.STAT.ANN. arts. 5529 & 5535 (Vernon 1958) with TEX.CIV. PRAC. & REM.CODE ANN. §§ 16.001(b) & 16.051 (Vernon 1986 & Supp.1994). We thus reject appellant's allegation that the State has changed the statute of limitations and therefore has "imposed a social contract upon the appellant not in effect at the alleged conception or birth of the subject child." Appellant was never entitled to rely on an unconstitutional statute, and the residual limitations statute remains unchanged today. Accordingly, we overrule appellant's first three points of error.

### Retroactive Support

In his fourth point of error, appellant contends that retroactive child support is applicable only to those cases brought under the current statutes. He asserts that while "current logic" assumes that ·a biological father owes his child monetary support throughout the entire period of the child's minority, such was not the "correct or legitimate interpretation of the social contract and law that existed in 1976–77." We disagree.

While the legislation that permits child support to be assessed retroactive to birth has only recently been enacted,[1] earlier statutes, that authorized retroactive support only

to the date of filing suit, were construed to permit an award of support back to the date of birth. *See, e.g., Goheen v. Koester,* 794 S.W.2d 830, 834 (Tex.App.—Dallas 1990, writ denied); *State v. Johnican,* 830 S.W.2d 215, 216–17 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Adams· v. Stotts,* 667 S.W.2d 798, 800 (Tex.App.—Dallas 1983, no writ). All these decisions were premised on the critical determination that to deny benefits to children based upon the status of their parents' relationship at birth is a denial of equal protection under both a federal and a state constitutional analysis. *Goheen,* 794 S.W.2d at 834–35 & n. 3; *Johnican,* 830 S.W.2d at 217; *Adams,* 667 S.W.2d at 800.

In 1973, the United States Supreme Court reviewed the Texas statutory scheme which did not recognize an enforceable duty on the part of a biological father to support his illegitimate children. The Court opined:

> [A] State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother.

*Gomez v. Perez,* 409 U.S. 535, 539, 93 S.Ct. 872, 872, 35 L.Ed.2d 56 (1973). Additionally, in 1976–77, the period deemed significant by appellant, the Texas Family Code clearly delineated the parental duty to support. TEX. FAM.CODE ANN. § 12.04(3) (Vernon 1986) (originally enacted in 1973 by the 63rd Legislature; amended 1975, 1983 and 1989). The code also stipulated that the effect of a decree of paternity "is to create the parent-child relationship between the father and the child as if the child were born to the father and mother during marriage." TEX.FAM. CODE ANN. § 13.09 (Vernon 1986) (added by Acts 1975, 64th Legislature effective September 1, 1975.) Therefore, it is clear that both case law and statutory authority contradict appellant's assertion that, when this child

---

1. Section 13.42 of the Texas Family Code was amended to provide for assessment of child support retroactive to birth of the child by the 73rd Legislature, effective September 1, 1993.

was conceived and born, the law and social mores of the time placed no responsibility on his shoulders. Then, as today, "if a party is a parent at the time of judgment, he was also a parent at the time of birth, and a parent's duty to support begins at birth." *Johnican*, 830 S.W.2d at 216. We hold that upon adjudicating appellant the father of Mel L. Blake, the court acted without error in awarding child support retroactive to the child's birth. Appellant's fourth point of error is overruled.

### Right to Appointed Counsel

■ In his fifth point of error, appellant asserts that the court's failure to provide him with appointed counsel violated his right to substantive due process.

Appellant alleges indigent status and complains that the "unlimited resources and power of the State" were marshalled against him and in favor of the child and the child's mother.

We initially note that appellant did not provide the trial court with any evidence of indigence. Even appellant's motion, which requested appointment of counsel and alleged his indigence, was unverified. Also, contrary to appellant's assumptions, the Attorney General did not represent the child's mother in this case. The Attorney General's Office proceeded with suit in its own name under the authority of Chapter 76 of the Texas Human Resources Code (Vernon 1990 & Supp.1994). The child's mother appeared pro se.

Appellant concedes that there is no precedent upon which to base appointment of counsel in a civil case. There is precedent, however, which would imply that the failure to appoint counsel in this case is not a violation of due process. In a case where an unrepresented parent had her parental rights forever terminated, the United States Supreme Court stated:

> [N]either can we say that the Constitution requires the appointment of counsel in every parental termination proceeding.... [T]hree elements to be evaluated in deciding what due process requires [are] the private interests at stake, *the government's interest*, and the risk that the procedures used will lead to erroneous decisions. We must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel *only where the indigent, if he is unsuccessful, may lose his personal freedom.*

*Lassiter v. Department of Social Servs. of Durham County, N.C.,* 452 U.S. 18, 28–33, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981) (emphasis added). The Court found no error in the failure to appoint counsel for the parent.

Assessing this case, in view of the elements listed above, we agree with the Houston Court of Appeals that a child's interest in establishing paternity overrides the interests of the alleged father. *See Martinez v. Department of Human Resources,* 620 S.W.2d 805, 808 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). The government here has a valid pecuniary interest in establishing support for the child to keep him off the welfare rolls. The risk of an erroneous decision in this particular case is extremely negligible. Medical testing provided a 99.87% probability that appellant was the child's biological father. Appellant has not challenged the sufficiency of the evidence and does not allege that he is not the biological father of Mel L. Blake. In view of the evidence presented at trial, we find it difficult to imagine how the assistance of counsel would have made any difference in the outcome of this litigation. And finally, we note that appellant was not threatened with the loss of his personal liberty in this purely civil action. The weight of the scale tips heavily against the need for appointed counsel in appellant's case. We hold that the trial court committed no error in failing to appoint counsel for appellant. We overrule point five.

The judgment of the trial court is, in all things, **AFFIRMED.**